## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JESSE AARON CHANDLER,          :

          Petitioner          :          CIVIL ACTION NO. 3:25-1248

    v.          :          (JUDGE MANNION)

UNITED STATES OF AMERICA,          :

          Respondent          :

### MEMORANDUM

Currently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. §2241 filed by *pro se* Petitioner Jesse Aaron Chandler ("Chandler"). For the reasons set forth below, the Court will dismiss Chandler's Section 2241 petition.

## I.   BACKGROUND

Chandler is currently serving a sentencing of one hundred and forty-four (144) months of federal incarceration after pleading guilty to possession of methamphetamine with intent to distribute in the United States District Court for the District of Utah. *See United States v. Chandler*, No. 16-cr-614 (D. Utah Aug. 28, 2018), ECF No. 109 at 1–2; (Doc. 1 at 1).[1] He commenced the instant action by submitting his Section 2241 petition, which the Clerk of

---

[1] Chandler was also sentenced to five (5) years' supervised release. *See Chandler*, ECF No. 109 at 3; (Doc. 1 at 1).

Court docketed on July 8, 2025. (Doc. 1.) In this petition, Chandler seeks an order requiring the Federal Bureau of Prisons ("BOP") to apply First Step Act ("FSA") time credits he claims to have earned. (*Id.* at 2.)

Although Chandler neither remitted the fee nor sought leave to proceed in forma pauperis when he filed his petition, he later paid the fee. (Doc. 4.) Soon thereafter, the Court issued an Order which, inter alia, directed Respondent to file a response to Chandler's Section 2241 petition. (Doc. 5.) After requesting and receiving an extension of time to file a response, Respondent timely filed a response to the petition on August 26, 2025, in which he argues that the Court should dismiss the petition because Chandler failed to exhaust his administrative remedies or, alternatively, deny the petition because it lacks merit. (Doc. 9.) Chandler then filed a reply brief, which the Clerk of Court docketed on September 15, 2025. (Doc. 10.) Chandler's Section 2241 petition is ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Section 2241 Petitions Filed by Federal Prisoners

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." *Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); *Woodall v. Fed. Bureau of*

*Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." *Woodall*, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. *See, e.g.*, *Barden v. Keohane*, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the manner in which the BOP is computing their federal sentence); *United States v. Vidal*, 647 F. App'x 59, 60 (3d Cir. 2016) (unpublished) ("Because [the federal inmate's] claim challenges the BOP's calculation of sentence credits, it is appropriately addressed in a petition for a writ of habeas corpus pursuant to [Section] 2241" (citation omitted)).

### B. Administrative Exhaustion Requirement for Section 2241 Petitions Filed by Federal Prisoners

Unlike with Section 2254 petitions and Section 2255 motions, there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) ("[T]here is no statutory exhaustion requirement attached to §2241[.]"). Nevertheless, the Third Circuit Court of Appeals has "consistently applied an exhaustion

- 3 -

requirement to claims brought under §2241." *Id.* (citations omitted). Exhaustion "allow[s] the appropriate agency to develop a factual record and apply its expertise[,] . . . conserves judicial resources[,] and . . . provide[s] agencies the opportunity to correct their own errors [which] fosters administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996) (citations omitted).

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review. *See Eiland v. Warden Fort Dix FCI*, 634 F. App'x 87, 89 (3d Cir. 2015) (unpublished) (explaining that "exhaustion is a precondition to bringing suit" and summarily affirming district court's dismissal of Section 2241 petition due to petitioner's failure to exhaust). Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if "the issue presented involve[s] only statutory construction." *Vasquez v. Strada*, 684 F.3d 431, 433–34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Similarly, exhaustion is not required "if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served." *Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010) (unpublished); *see also Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (explaining that "[a]n exception is made [to the exhaustion requirement] only

- 4 -

if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief").

## III.    DISCUSSION

### A.    Exhaustion

Respondent argues that the Court should dismiss Chandler's Section 2241 petition for failure to exhaust. (Doc. 9 at 4–7.) The Court agrees.

Concerning exhaustion within the BOP, it has an Administrative Remedy Program through which federal prisoners can request review of nearly any aspect of their imprisonment. *See* 28 C.F.R. §542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."). Specifically, the BOP has a four (4)-step administrative process through which an inmate can address issues concerning the conditions of their confinement. *See id.* §542.13(a)–15(a). Except in circumstances inapplicable here, an inmate must first informally present the complaint to staff, who must attempt to informally resolve the matter. *See id.* §542.13(a) ("Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally

resolve the issue before an inmate submits a Request for Administrative Remedy.").[2]

If the informal resolution is unsuccessful, then the inmate must execute the appropriate form (BP–9) to bring the matter to the attention of the Warden, within twenty (20) calendar days of "the date on which the basis for the Request occurred." *See id.* §542.14(a) ("The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP–9), is 20 calendar days following the date on which the basis for the Request occurred."). The only exceptions to this requirement are when the inmate: (1) raises a "sensitive" issue, "and the inmate's safety or well-being would be placed in danger if the Request became known at the institution"; (2) appeals from a Discipline Hearing Officer ("DHO") decision regarding a disciplinary infraction; (3) appeals from "Executive Panel Reviews of Control Unit placement"; (4) appeals from "the Regional Director's review of controlled housing status

---

[2] An attempted informal resolution is not required (1) for inmates in BOP Community Corrections Centers, (2) "prior to submission to the Regional or Central Office as provided for in §542.14(d) of this part," and (3) when the "Warden or institution Administrative Remedy Coordinator" exercises discretion to waive it because "the inmate demonstrates an acceptable reason for bypassing informal resolution." *Id.* §542.13(b).

placement"; or (5) seeks "formal review of decisions not originating from the Warden[,] . . . or his/her staff . . . ." §542.14(d)(1)–(5).

A formal Request (or Appeal) "is considered filed on the date it is logged into the Administrative Remedy Index as received." *Id.* §542.18. Upon the filing of the Request, the Warden has twenty (20) days to respond to the Request unless that time is extended by no more than twenty (20) days. *Id.* Importantly, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

If the inmate is dissatisfied with the Warden's response, they may appeal to the Regional Director within twenty (20) calendar days. *See id.* §542.15(a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."). The inmate may then, if dissatisfied with the Regional Director's response, appeal to the General Counsel at the BOP's Central Office within thirty (30) calendar days. *See id.* ("An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response."). This is the final administrative

appeal level in the BOP, and no administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. *See id.* ("Appeal to the General Counsel is the final administrative appeal."); *see also Redmond v. Dortch*, 823 F. App'x 266, 267 (5th Cir. 2020) (unpublished) ("Redmond did not fully exhaust his remedies because he never completed the fourth and final step of appeal to the Office of General Counsel.").

Here, Chandler, who acknowledges that he has a recidivism risk assessment of "Medium Low," contends that he exhausted his administrative remedies insofar as he "filled out [a paper] cop-out" in which he requested that the Warden deem him eligible for FSA credits, placed it in an envelope addressed to the Warden, and placed it in the BOP's mail system. (Doc. 10 at 1.) He believes that if the Warden either denied his petition or failed to respond to it within thirty (30) days, he had the right to file his Section 2241 petition. (*Id.*) He is mistaken.

In 2018, Congress passed the FSA to expand federal prisoners' access to noncustodial placements. *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at 18 U.S.C. §§3621, 3624, 3631–35). The FSA's provisions work together to motivate inmates to participate in specific programs and activities by allowing them to receive "earned time credits" for participating in "recidivism reduction programs." 18 U.S.C. §§3621(h), 3624(g), 3632. It also

requires the BOP to conduct initial assessments for all inmates, assign them to appropriate evidence-based recidivism reduction (EBRR) programs or productive activities (PAs), and expand the availability of such programs.

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within two-hundred-and-ten (210) days of December 21, 2018, the date on which the FSA was enacted. *See* 18 U.S.C. §3632(a). The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. *Id.* Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." *Kurti v. White*, 19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. §3632(b)). In response to this directive, the BOP developed the "Prisoner Assessment

Tool Targeting Estimated Risk and Needs" ("PATTERN") system. *Brennerman v. Warden, FCI-Allenwood Low*, No. 24-cv-2029, 2025 WL 52469, at \*1 (M.D. Pa. Jan. 8, 2025) (citing *DeFoggi v. United States*, No. 20-cv-3889, 2020 WL 2899495, at \*2 n.1 (D.N.J. June 3, 2020)). The PATTERN system "determines the recidivism risk of each prisoner . . . and classif[ies] each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. §3621(a)(1).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FSA time credits to be applied toward time in pre-release custody or supervised release. *See id.* §3632(d)(4)(A). An inmate may initially earn ten (10) days of credit for every thirty (30) days of successful participation. *See id.* Moreover, eligible inmates assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn an additional five (5) days of credit for every thirty (30) days of successful participation. *See id.*

The BOP applies earned time credits to expedite an inmate's transfer either to prerelease custody, which includes residential reentry centers (RRCs) and home confinement, or to supervised release if such a term has been imposed as part of the inmate's sentence:

> If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of

supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

*Id.* §3624(g)(3)

To be eligible for early placement, the prisoner must satisfy the following eligibility criteria: First, the prisoner must have earned time credits equal to the remainder of their imposed term of imprisonment. *See id.* §3624(g)(1)(A). Second, the prisoner must have demonstrated a reduced recidivism risk or maintained a low risk during imprisonment. *See id.* §3624(g)(1)(B). Third, the prisoner's remaining sentence must have been computed "under applicable law." *Id.* §3624(g)(1)(C). Fourth, for placement in prerelease custody or early placement in supervised release, the prisoner must have a minimum or low recidivism risk score in the last two (2) reassessments. *See id.* §3624(g)(1)(D)(i)–(ii).

If an inmate cannot meet this recidivism-risk requirement, they can alternatively petition the Warden to be considered on an individualized basis for placement in prerelease custody or supervised release. *See id.* §3624(g)(1)(D)(i)(II); *Delgado v. Barraza*, No. 23-cv-881, 2023 WL 4553380, at *1 (M.D. Pa., July 14, 2023) ("Inmates with a high or medium PATTERN score can petition the warden to be considered on an individual basis for

placement in prerelease custody or supervised release." (citations omitted)). The Warden can approve that petition upon determining that the prisoner (1) "would not be a danger to society if transferred to prerelease custody or supervised release," (2) "has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities," and (3) "is unlikely to recidivate." *Id.* §3624(g)(1)(D)(i)(II)(aa)–(cc); 28 C.F.R. §523.44(c)(2). "This exception to the minimum- or low-recidivism-risk precondition requires an inmate to directly petition the Warden, and therefore by statute (and regulation) demands administrative exhaustion." *Fowler v. Wertzman*, No. 23-cv-290, 2023 WL 4853720, at *2 (M.D. Pa. July 28, 2023).

Although this exception requires exhaustion, the precise parameters of the actions needed to fully exhaust are unclear. The statute requires only that an otherwise ineligible prisoner petition and obtain approval from the Warden to be placed in prerelease custody or early supervised release. *See* 18 U.S.C. §3624(g)(1)(D)(i) (allowing for placement in prerelease custody if the prisoner "has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison . . . ."). It does not, inter alia, (1) establish a procedure for a prisoner to submit the petition, *i.e.* through an Inmate Request to Staff form (Form BP-S148.055 or BP-A0148),

- 12 -

a formal Administrative Remedy (Form BP-9), or a handwritten piece of paper; (2) designate a time period within which the Warden must decide the petition; or (3) set forth any procedures for a prisoner to follow if the Warden denies the petition. *See id.*; *see also Jones v. LeMaster*, No. 23-cv-83, 2023 WL 6926201, at *2 (E.D. Ky. Oct. 19, 2023) (explaining that "§3624(g)(1)(D)(i)(II) grants the warden the authority to approve a prisoner's petition for an exception, and further establishes substantive criteria for evaluating it, but conspicuously does not establish any particular procedure to follow in doing so").

Respondent indicates that BOP Program Statement 5410.01 establishes the proper procedure for a prisoner to petition the Warden for application of their FSA time credits. (Doc. 9 at 10 (citation omitted)). Under this Program Statement, the prisoner must submit an Inmate Request to Staff during their regularly scheduled Program Review. (*Id.* (citing Doc. 9-2 ¶7)). The Unit Team then forwards the prisoner's request to the Warden for decision. (*Id.* (citing Doc. 9-2 ¶7)). If this is the proper procedure, *see Waters v. Ray*, No. 23-cv-330, 2024 WL 1282416, at *3 (N.D. W. Va. Mar. 26, 2024) (discussing Program Statement 5410.01 as the applicable procedure), Chandler did not follow it because he states that he placed his Inmate Request to Staff form in the "very same mail system used to file and mail [his

Section 2241 petition] to the courts," and he does not assert that he submitted it to the Unit Team during his regularly scheduled Program Review. (Doc. 10 at 4).

Even if the Court determined that Chandler followed the applicable procedure by submitting his petition via an Inmate Request to Staff to the Warden, he has not exhausted this claim because he never received a decision from the Warden before filing his petition. Chandler's argument that he somehow exhausted his claim when he did not receive a response within thirty (30) days after submitting the Inmate Request to Staff form is meritless because Section 3624(g)(1)(D)(i)(II) does not require the Warden to respond within thirty (30) days or any other period.[3] As such, it appears that a federal prisoner must receive a response from the Warden to fully exhaust their claim that they qualify for the exception to the minimum- or low-recidivism-

---

[3] This differentiates Section 3624(g)(1)(D)(i)(II) from a statute like 18 U.S.C. §3582(c), which allows a federal criminal defendant to file a motion requesting that a district court modify their term of imprisonment after they have "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant, whichever is earlier . . . ." *Id.* §3582(c)(1)(A). Although Chandler does not state as such, Section 3582(c) could be the foundation of his mistaken belief that he could file his Section 2241 petition if the Warden did not respond to him within thirty (30) days. *See, e.g.*, (Doc. 10 at 4 (stating that he "wait[ed] the (30) [sic] days that are required before moving onto the 2241 motion before the Courts [sic]")).

risk precondition. Therefore, Chandler failed to exhaust his administrative remedies before filing his Section 2241 petition in this case.[4]

At this point, this Court has no BOP decision to review. Moreover, considering that the Warden has not addressed Chandler's petition, any argument that he should be excused from exhaustion because it would be futile, *see, e.g.*, (Doc. 10 at 3), is pure speculation. Accordingly, while Chandler's efforts to rehabilitate as described in his petition are surely commendable, *see* (Docs. 1 at 2; 1-2–1-4), the Court must dismiss Chandler's claim that he should have his FSA credits applied despite his "Medium Low" recidivism risk assessment based on the exception set forth in Section 3624(g)(1)(D)(i).[5]

---

[4] The only other option for exhaustion would involve the BOP's Administrative Remedy Program's application to petitions seeking application of the Section 3624(g)(1)(D)(ii)(II) exception. However, Chandler does not fare any better under this scenario because the Warden would have had twenty (20) calendar days to respond to his petition and, if Chandler did not receive a response within this period, he could "consider the absence of a response [by the Warden] to be a denial . . . ." 28 C.F.R. §542.18. At that point, Chandler would have needed to file an appeal to the Regional Director, *see* 28 C.F.R. §542.15(a), which he did not do, as evidenced by Chandler's lack of administrative remedies filed while incarcerated in the BOP. *See* (Docs. 9-2 ¶8; 9-5 at 2).

[5] Even if Chandler had filed his Section 2241 petition after the Warden denied his request, it is unclear whether the Court could consider the Warden's decision beyond determining whether the Warden abused their discretion. *See Bains v. Quay*, No. 21-cv-353, 2021 WL 5343485, at *3 n.9

*(footnote continued on next page)*

## IV.    CONCLUSION

For the above reasons, the Court will dismiss Chandler's Section 2241 petition without prejudice for his failure to exhaust administrative remedies. An appropriate Order follows.

MALACHY E. MANNION
United States District Judge

**DATE:** 11/24/25
25-1248-01

(M.D. Pa. Oct. 27, 2021) (describing recidivism-risk exception in Section 3624(g)(1)(D)(i)(II) as "discretionary"), *report and recommendation adopted*, 2021 WL 5330841 (M.D. Pa. Nov. 16, 2021).